IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY BENNETT, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-5170 |
| | : | |
| STATE FARM FIRE AND CASUALTY CO., | : | |
| PROGRESSIVE ADVANCED INSURANCE | : | |
| Defendants. | : | |

McHUGH, J.                                                                                                       NOVEMBER 30, 2017

**MEMORANDUM**

This is an action for underinsured motorist benefits against Defendant State Farm. I have previously held that New York law controls. State Farm has now moved for summary judgment, contending that Plaintiffs settled their claims with the negligent motorist without properly notifying State Farm, and that failure to give notice defeats the claim under New York law, which presumes that a carrier is prejudiced when its subrogation rights are waived without its consent. There is no question that Plaintiffs extinguished all claims against the underlying tortfeasor without State Farm's consent. Because Plaintiffs have not rebutted the presumption of prejudice, State Farm is entitled to summary judgement.

**I. Pertinent Facts**

On August 27, 2013, a motorist struck Plaintiff Jeffrey Bennett as he was riding his bicycle in Bucks County, Pennsylvania. The striking motorist was insured by USAA Casualty Insurance Company, with a liability limit of $15,000. Mr. Bennett and his wife held a motor vehicle policy with Defendant Progressive Advanced Insurance Company; Mr. Bennett individually held a motor vehicle policy with State Farm for his motorcycle; and a resident

1

relative of Plaintiffs, Anthony Sellitto, also maintained a policy with Progressive Insurance. Plaintiffs' policy with Progressive provided $50,000 in uninsured and underinsured motorist ("UIM") coverage for each insured person, and Mr. Bennett's State Farm policy included $100,000 in UIM coverage for each person.

In an offer to settle Plaintiff's claims against the motorist, USAA tendered to Mr. Bennett the full limit of the motorist's policy on June 5, 2014. Mr. Bennett then contacted Progressive to request its consent to the release. On June 13, 2014, Mr. Bennett's counsel also sent a fax to State Farm's claims office in Atlanta, which stated:

> Let this correspondence serve as Mr. Bennett's claim for uninsured motorist coverage. Please set up a claim for this matter, note my representation, and forward letter confirming same.

Ex. 2-E, ECF No. 32-3 at 26. No mention was made of the pending settlement offer. On July 30, 2014, State Farm opened an uninsured motorist claim. The next day, July 31, Mr. Bennett's counsel sent a second letter to State Farm, stating:

> Per your correspondence, please find attached a copy of the police report in the above referenced matter.

Ex. 2-G, ECF No. 32-3 at 32. Again, no mention was made of the pending settlement offer.

On June 19, after sending his first correspondence to State Farm, Mr. Bennett signed a Release of All Claims against the motorist, Ex. B, ECF No. 32-2 at 20, though it was not forwarded to USAA until July 31, 2014. For reasons that are not clear, although Plaintiff sought consent to settle from Progressive, as set forth above, State Farm was not advised of the pending settlement offer in either the July 13 or July 31 correspondence from counsel, with the result that the case against the motorist was settled without State Farm's knowledge or consent.

Mr. Bennett's contract with State Farm contained language pertaining to an insured's settlement of claims, as required under New York Insurance Law § 3420 and N.Y. Comp. Codes R. & Regs. tit. 11, § 60-2.3. The policy provided that the sum coverage does not apply to

> bodily injury to an insured, including care or loss of services recoverable by an insured, if such insured, such insured's legal representatives, or any person entitled to payment under this coverage, without our written consent, settles any lawsuit against any person or organization that may be legally liable for such injury, care or loss of services, but this provision shall be subject to condition 10.

Ex. 2-C, ECF No. 32-3 at 6–7 ("6163A Supplementary Uninsured/Underinsured Motorists Endorsement—New York") (emphasis removed). Condition 10 in turn provides:

> In accidents involving the insured and one or more negligent parties, if such insured settles with any such party for the available limit of the motor vehicle bodily injury liability coverage of such party, release may be executed with such party after thirty calendar days actual written notice to us, unless within this time period we agree to advance such settlement amounts to the insured in return for the cooperation of the insured in our lawsuit on behalf of the insured.

*Id.* at 8 (emphasis removed). Taken together, these provisions balance the interests of the carrier and the policyholder. Consent is required, but so long as the insured has provided written notice, the insured may proceed to settle with the tortfeasor after 30 days have passed without jeopardizing UIM coverage.

Plaintiffs seek to avoid the consequences of their failure to give notice and seek consent on the basis of mistakes State Farm made in its initial analysis of the limits of coverage, which initially led it to an erroneous conclusion that no coverage existed under New York law. But these mistakes occurred **after** Plaintiff had extinguished State Farm's right of subrogation, and nothing Plaintiff did was the result of State Farm's initial mistake. Specifically, after State Farm opened a UIM claim, it initiated an Insurance Services Office ClaimSearch, and found that Mr. Bennett had UIM coverage under policies with Progressive Insurance, and also learned that the motorist was insured with USAA. On August 5, 2014, State Farm, acting on the mistaken belief

3

that the motorist's USAA policy offered coverage "equal to or exceeding" Mr. Bennett's policy with State Farm, denied Mr. Bennett's claim. *See* Ex. 2-H, ECF No. 32-3 at 34. But by the time the mistaken denial occurred, Plaintiff had already forwarded a release extinguishing the liability of the striking driver. State Farm recognized its mistake after gathering more information about the terms of the available coverage, but then denied UIM benefits for the separate reason that Mr. Bennett had never given notice and sought consent to accept USAA's tender of liability limits available under the striking driver's policy. Ex. 2-I, ECF No. 32-3 at 37.

Plaintiff and his wife have sued seeking UIM benefits from State Farm, and asserting a claim under Pennsylvania's bad faith statute, 42 Pa. C.S. § 8371.

## II. Summary Judgment Standard

This motion is governed by the well-established standard for summary judgment under Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). As the parties' briefs indicate, Plaintiffs and State Farm do not dispute the facts in this case, but only the proper application of the controlling law. This matter is therefore suitable for resolution by summary judgment.

## III. Plaintiffs' Breach of Contract Claim

There is no question that before singing the release of claims against the motorist, Mr. Bennett failed to seek State Farm's consent. State Farm's policy plainly states that it has no obligation to pay UIM benefits to an insured party who settles with a tortfeasor without State Farm's consent. Under New York law, in such circumstances, Plaintiffs can survive State Farm's Motion only if they show that the settlement did not prejudice its subrogation rights, or that State Farm somehow waived Mr. Bennett's obligations to provide advance notice. *See*

4

*Travelers Home & Marine Ins. Co. v. Kanner*, 103 A.D.3d 736, 738, 962 N.Y.S.2d 153, 156 (2013); *In re Allstate Ins. Co. (Liberati)*, 280 A.D.2d 922, 922, 720 N.Y.S.2d 681, 682 (2001).

Plaintiff argues that State Farm has failed to show prejudice. Plaintiff misapprehends New York law, which presumes that an insurer is prejudiced if its insured fails to seek written consent before settling with a tortfeasor, and the terms of the settlement do not preserve the insurer's subrogation rights. *Travelers Home & Marine Ins. Co*, 103 A.D.3d at 738; *Morrison by Morrison v. Worldwide Ins. Grp.*, 212 A.D.2d 518, 519, 622 N.Y.S.2d 120 (1995). As the New York Court of Appeals has stated, "It is the burden of the insured to establish by virtue of an express limitation in the release or of a necessary implication arising from the circumstances of its execution that the release did not operate to prejudice the subrogation rights of the insurer." *Weinberg v. Transamerica Ins. Co.*, 62 N.Y.2d 379, 382–83, 465 N.E.2d 819 (1984).

By its terms the release clearly extinguished the liability of the tortfeasor, so the issue then is prejudice. Plaintiffs suggest that State Farm never had "a true subrogation interest that required protection" because Mr. Bennett's "out of pocket loss exceeded the policy limits of the tortfeasor." Pls.' Br. Opp'n D.'s Mot. Summ. J. 9, ECF No. 38-1 [hereinafter "Pls.' Br."]. This assumes that State Farm would have no right to pursue the matter beyond the limits of coverage, but that is not the case. It may be true that carriers frequently choose not to pursue a judgment in subrogation matters, but that is a separate issue from whether they have the right to do so. Progressive was willing to waive subrogation, so it might be that the driver was for practical purposes judgment-proof, rendering State Farm's right illusory, but Plaintiffs raise no argument to that effect and apparently did not explore through discovery State Farm's protocol for pursuing subrogation in cases of this kind.

5

Plaintiffs further argue that State Farm waived the consent requirement through its delay in opening Mr. Bennett's UIM claim. Plaintiffs cite *Travelers Home & Marine Insurance Company*, where the court stated, "The failure to obtain [the insurer's] consent disqualifies the insured from availing himself or herself of the pertinent benefits of the policy, unless the insured can demonstrate that the insurer, either by its conduct, silence, or unreasonable delay, waived the requirement of consent or acquiesced in the settlement." 103 A.D.3d at 737. Plaintiffs suggest that State Farm's delay in responding to Mr. Bennett's uninsured motorist claim amounted to a waiver of its consent requirement. Pls.' Br. 8.

The uncontested facts do not support such a theory. When State Farm was first put on notice of a claim in mid-June, Plaintiffs already had a tender of limits from the tortfeasor in proposed settlement of the underlying case. Progressive, the other carrier with potential liability for UIM benefits, was given notice of the offer, but inexplicably State Farm was not. State Farm had not by that point denied the claim, and its delay in responding can hardly be said to have misled Plaintiffs into concluding that there was no coverage, because further correspondence forwarding the police report was sent by counsel to State Farm on July 31, evincing continued pursuit of the claim. But that same day the release of the striking motorist was sent to her liability carrier, USAA. In short, knowing that they intended to present a claim for UIM benefits to State Farm, and necessarily knowing that consent would be required, as evidenced by the request made of Progressive, Plaintiffs released the underlying tortfeasor. Given this chronology of events, State Farm's later erroneous denial of coverage, based on its initial misunderstanding of the applicable policies, is immaterial. Furthermore, State Farm's delay in opening a claim cannot be deemed prejudicial. Under the New York statute, Mr. Bennett could have given notice to State Farm and settled after thirty days. In simple terms, the mistake State

6

Farm made at a later point is legally irrelevant because Plaintiffs had breached the terms of the policy even before State Farm first addressed the claim, and they have not set forth a basis for excusing that breach.

### IV. Plaintiffs' Bad Faith Claim

Plaintiffs contend that Pennsylvania law, not New York law, should govern their bad faith claim, because the claim's "genesis is in tort, separate and apart from the breach of contract insurance claim for UIM benefits raised in this matter." Pls.' Br. 11. In denying State Farm's Motion to Dismiss, I previously held that New York had a greater interest in the application of its insurance laws, Mem. Order 4 n.3, ECF No. 9, and now reach the same conclusion as to the issue of purported bad faith.

Under New York law, a claim for bad faith is not an independent tort but linked to the carrier's duties arising out of the policy. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318, 662 N.E.2d 763, 768 (1995) (holding that New York insurance laws "cannot be construed to impose a tort duty of care flowing to the insured separate and apart from the insurance contract"); *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 124 (S.D.N.Y. 2002) (". . . New York does not recognize bad faith denial of coverage as an independent tort . . . ."). On the undisputed facts here, State Farm had a valid basis for denying benefits under New York law. The error it made in the initial determination of coverage—an error it corrected—does not rise to the level of bad faith, and in any event is not causally related to the legitimate basis on which it denied the claim. Even if Pennsylvania law were deemed to apply, the record in this case would not suffice to establish a case of bad faith.

**V. Conclusion**

On the uncontested facts of this case State Farm had a valid basis for its denial of benefits, and Plaintiffs have not met their burden under New York law to excuse their breach of the terms of the contract. Given the legitimacy of State Farm's denial, any claim for bad faith necessarily fails as well. State Farm's Motion for Summary Judgment will be granted.

/s/ Gerald Austin McHugh
United States District Judge